Eugene LEWIS, Appellant,

v.

UNITED STATES, Appellee.

No. 11533.

District of Columbia Court of Appeals.

Submitted Feb. 16, 1978.

Decided March 15, 1979.

Robert H. Haas, Washington, D. C., appointed by the court, was on brief, for appellant.

Earl J. Silbert, U. S. Atty., and John A. Terry, Albert H. Turkus, John R. Fisher, and Edward D. Ross, Jr., Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KELLY, HARRIS and MACK, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted in a nonjury trial of carrying a pistol without a license, D.C.Code 1973, § 22–3204, and of the possession of both an unregistered firearm and ammunition for an unregistered firearm. D.C.Pol.Regs., art. 51, § 1, and art. 53, § 2. He contends that his motion to suppress the firearm and the ammunition as the products of an illegal search and seizure erroneously was denied. We affirm.

Appellant and a companion were spotted by Metropolitan Police Officers Pope and Simms in the vicinity of the intersection of 12th and U Streets, N.W. The officers were dressed in casual clothes and were driving an unmarked automobile. Their attention was drawn to appellant and his companion because the companion was carrying a sweater which was tightly wrapped, apparently around some object. The officers' suspicions were aroused because the companion adjusted the position of the sweater several times as they watched. They decided to leave their car and investigate further. Upon nearing the two men, the officers noticed what appeared to be the outline of a gun underneath the sweater. Officer Simms approached the companion, identified himself as a police officer, and took the sweater and the gun which was hidden within it. At that point, Officer Pope, who had been talking to appellant, identified himself as an officer, asked for appellant's identification, and proceeded to frisk his outer garments. After finding nothing, Officer Pope returned to his car to check on whether there was an outstanding warrant for appellant's arrest. As Pope checked the warrant book, Simms frisked appellant. This frisk revealed a pistol in appellant's waistband, and appellant was placed under arrest.

At a pretrial hearing, appellant's motion to suppress the pistol and ammunition was denied. At trial, appellant was found guilty after stipulating to the facts which were established by the testimony of Officer Pope at the suppression hearing. He appeals his conviction on the ground that the frisk and the seizure of the pistol violated his Fourth Amendment rights, and that the pistol therefore should not have been admitted into evidence against him. *See* *Weeks v. United States*, 232 U.S. 383, 391–93, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

Appellant first argues that at the time the gun was seized, he was in fact under arrest, since he was not free to leave the scene. He further argues that since there was no probable cause for his arrest, the frisk and the seizure of the pistol were unconstitutional. We agree that there was no probable cause for the arrest of appellant upon the officers' discovery of the weapon possessed by his companion. On the other hand, the Supreme Court has recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) (hereinafter cited as *Terry*). The actions of Officers Pope and Simms in approaching and questioning appellant constituted permissible investigative activity as described in *Terry*, and appellant was placed under arrest only upon the officers' discovery of the weapon concealed on his person.

Appellant next contends that even if his initial "seizure" did not amount to an arrest requiring probable cause, it nonetheless cannot be justified as a protective frisk because the *Terry* standard was not met. Both the initiation and the scope of his unproductive search by Officer Pope, contends appellant, exceeded the proper limitations established by the Fourth Amendment. We disagree.

■ The Supreme Court established in *Terry* that a protective frisk is justified, without probable cause to arrest, when "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27, 88 S.Ct. at 1883. A search and seizure are constitutional if the police are acting reasonably in intruding on a citizen's personal privacy. However, the "officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.*, at 21, 88 S.Ct. at 1880 (footnote omitted). Whether there are "specific and articulable facts" to justify a stop for questioning is an issue which must be carefully scrutinized. *Stephenson v. United States*, D.C.App., 296 A.2d 606, 609 (1972). In *Stephenson*, we mentioned the following factors as being crucial in determining whether an on-the-scene stop for questioning by a police officer was reasonable: (1) the particular activity of the person stopped for questioning which the investigating officer has observed, (2) the officer's knowledge about (a) the activity of the person observed and/or (b) the area in which the activity is taking place, and (3) the immediate reaction or response of the person upon being approached and questioned by the officer. *Id.*, at 609.

■ The record reflects that Officer Pope was able to point to specific and articulable facts relating to those three factors which reasonably warranted his frisk of appellant. Appellant was in the company of an individual who was unlawfully carrying a weapon. The weapon, although concealed in a sweater (in the month of June), was apparent to the police officers as soon as they approached, and it reasonably may be inferred that the presence of the weapon was apparent to appellant also. Appellant and his companion appeared to be more than just casual acquaintances, as the officers observed them walking and conversing for a short time before deciding to approach them. Officer Pope had worked in the area of 12th and U Streets for approximately seven years, and he knew it to be an area with a high incidence of robberies and narcotics dealings. Furthermore, when Officer Pope spoke with appellant after the seizure of the companion's weapon, appellant appeared to be very nervous, with "a look on his face like he was going to run." Officer Pope, from his own experience, was aware that "when you case a subject out in the street with a gun and he's walking with another gentlemen, nine chances out of ten he is going to use that gun to hold up somebody. And I have seen other cases where not only one person had the gun, the other subject had a gun."

The fact that his companion had just been arrested for unlawful possession of a firearm is a particularly compelling justification for the frisk of appellant. We agree with the reasoning of the Ninth Circuit as to the reasonableness of such a frisk:

> In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 . . . (1967), the Court affirmed the right of a limited search "to assure * * * that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him" despite the absence of probable cause for an arrest. We think that *Terry* recognizes and common sense dictates that the legality of such a limited intrusion into a citizen's personal privacy extends to a criminal's companions at the time of arrest. It is inconceivable that a peace officer effecting a lawful arrest . . . must expose himself to a shot in the back from defendant's associate because he cannot on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance. All

companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory "pat-down" reasonably necessary to give assurance that they are unarmed. [*United States v. Berryhill*, 445 F.2d 1189, 1193 (9th Cir. 1971).] [1]

In the situation in which Officer Pope found himself after his partner arrested appellant's companion, it was wholly reasonable for Pope to suspect that appellant also might be armed and dangerous.[2] He thus was justified in subjecting appellant to "the cursory 'pat-down' reasonably necessary to give assurance that [appellant was] unarmed." *United States v. Berryhill, supra*, at 1193.

■ Progressing through the stages which comprised the incident, we consider whether Officer Simms violated the Fourth Amendment's requirement of reasonableness by subjecting appellant to a second frisk. "The manner in which the seizure and search were conducted is, of course, as vital a part of the inquiry as whether they were warranted at all. The Fourth Amendment proceeds as much by limitations upon the scope of governmental action as by imposing preconditions upon its initiation." *Terry, supra*, 392 U.S. at 28–29, 88 S.Ct. at 1883.

1. *Accord, United States v. Poms*, 484 F.2d 919, 922 (4th Cir. 1973); *People v. Garner*, 50 Ill. App.3d 294, 8 Ill.Dec. 357, 358, 365 N.E.2d 595, 596–97 (1977); *People v. Williams*, 28 Ill. App.3d 189, 328 N.E.2d 89, 93 (1975); *cf. United States v. Simmons*, 567 F.2d 314 (7th Cir. 1977) (accepting the *Berryhill* rationale as it applies to "pat-down" searches, but refusing to extend it to searches of items within the immediate control of an arrestee's companion); *United States v. Tharpe*, 536 F.2d 1098 (5th Cir. 1976) (officer's "pat-down" search is compatible with *Terry* where he has good reason to apprehend that he was in a position of real danger from companions of an arrestee); *United States v. Vigo*, 487 F.2d 295 (2d Cir. 1973) (search limited to arrestee's companion's purse justified under *Terry*).

2. The transcript of Officer Pope's testimony is slightly conflicting as to whether or not he suspected appellant of being armed:

■ As discussed above, the justification for allowing a protective search when there is less than probable cause to arrest is to enable a police officer to protect himself in a potentially dangerous situation. *Terry, supra*, at 29, 88 S.Ct. 1868; *Sibron v. New York*, 392 U.S. 40, 65, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Johnson v. United States*, D.C.App., 350 A.2d 738, 740–41 (1976). Accepting this protective goal as the justification for a frisk, it would be anomalous to limit this protective device to the first officer who happens to deal with a suspect. Assuredly an officer who subsequently comes into contact with a suspect likewise is entitled to take reasonable precautions for his own safety. *See United States v. Dyson*, D.C.App., 277 A.2d 658, 659 (1971).

Officer Pope testified that he frisked only appellant's left and right sides and that he did not frisk his waistband. Officer Simms, having been left with both suspects when Officer Pope went to the nearby car to check his warrant book, was justified in performing a more thorough frisk of appellant for his own protection. We agree with the following statement of the Supreme Court of Pennsylvania in a case involving a search incident to an arrest:

The mere fact that [appellant] had been preliminarily searched before . . . did not eliminate the possibility that he

Q. When you first frisked Mr. Lewis, did you have a hunch that maybe he was carrying contraband or a weapon or anything like that; is that the reason you searched him?
A. Did I have a hunch?
Q. Yes, you thought maybe he was—
A. No.
Q. Well, then, why did you search him?
A. My past knowledge indicates that holdup men travel together.
Q. But you had not received—
A. If one had a gun the other one might have a gun.

D.C.Code 1973, § 17–305(a), states in relevant part that when a case is tried without a jury, a "judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." Otherwise, "we are bound by the inference drawn by the trial court from the totality of the testimony." *Sanders v. United States*, D.C.App., 339 A.2d 373, 375–76 (1975).

might still have a potentiality of danger due to the possession of a concealed knife or other weapons which might very easily have been overlooked upon the officers' initial and hasty search . . . . [*Commonwealth v. Ellsworth*, 421 Pa. 169, 218 A.2d 249, 256 (1966).]

The totality of the record reflects that Officer Simms, like Officer Pope, justifiably suspected that appellant might be armed and dangerous and thus conducted a frisk for protective reasons only. The trial court did not err in concluding as it did "that the officers' actions in this case were proper, that they had a right to make an inquiry, they had a right to make the protective frisk."

*Affirmed.*

MACK, Associate Judge, concurring:

While I concur in the result, under the factual situation presented, I suggest that the government should have produced the officer [Simms] who recovered the gun from appellant in order that he too could have testified as to the specific and articulable facts which led him to frisk appellant. *Cf. Rushing v. United States*, D.C.App., 381 A.2d 252 (1977) (government's pretrial showing of grounds for search inadequate where the only officer present when events allegedly triggering search occurred did not testify).