*728 UPON A REHEARING EN BANC
BUMGARDNER, Judge.
A panel of this Court reversed the conviction of Christopher John Reittinger for possession of marijuana. See Reittinger v. Commonwealth, 28 Va.App. 80, 502 S.E.2d 151 (1998). Upon a rehearing en banc, we conclude that the deputy sheriff developed a reasonable, articulable suspicion that the defendant was armed and dangerous during a consensual encounter which immediately followed a lawful detention of the defendant. The frisk for weapons that the deputy conducted was reasonable under the circumstances of this case and did not violate the Fourth Amendment. Accordingly, we affirm the conviction.
A deputy sheriff stopped the defendant for driving his 1990 Volkswagen van with a broken headlight at 10:30 p.m. in rural Rockbridge County. The deputy determined that the defendant had already bought a replacement bulb, though he had not yet installed it. The deputy warned the defendant not to drive at night until he fixed the light but told him that he was “free to go.” Immediately thereafter, although the deputy did not have any particular reason to suspect criminal activity, he asked if the defendant had any contraband or firearms in the vehicle. Eventually, the defendant responded that he did not have any. The deputy then asked if he could search the vehicle for weapons or drugs. The deputy stated that he routinely asks for consent to search after most traffic stops and that he receives permission to do so in a majority of cases. The defendant turned around in his seat, looked at his two passengers, and whispered something the deputy could not hear. The deputy repeated his question several times, but the defendant did not answer. A second deputy was standing beside the passenger’s door. Finally, without being asked to get out, the defendant opened the van door and started getting out.
*729 As the defendant climbed out of the van, the deputy observed a bulge in his right front pocket. The deputy asked if the defendant had anything illegal on his person. The defendant replied that he did not but “moved his hand to cover up the bulge.” The deputy patted the defendant’s outer clothing, and felt a large, hard bulge in the pocket, which he thought might be a weapon. Again he asked the defendant what was causing the bulge, but the defendant did not answer. The deputy told him to empty the pocket, but the defendant emptied his left pocket, not the right one with the bulge. Increasingly suspicious that the defendant was hiding something, the deputy said, “you need to bring that out of your pocket,” and the defendant pulled out a smoking device. It contained marijuana residue and was the basis for the charge placed against the defendant.
The defendant filed a motion to suppress the evidence arguing that the deputy illegally searched him. The trial court ruled the deputy was justified in frisking the defendant for his own safety, denied the motion to suppress, and convicted the defendant of possession of marijuana.
On appeal, the defendant bears the burden to establish that denying the motion to suppress was reversible error. See Greene v. Commonwealth, 17 Va.App. 606, 608, 440 S.E.2d 138, 139-40 (1994). Whether a seizure occurred and whether a frisk for weapons was constitutionally valid involve questions of law and fact which we review de novo on appeal. See McGee v. Commonwealth, 25 Va.App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). “In performing such analysis, we are bound by the trial court’s findings of historical fact unless ‘plainly wrong’ or without evidence to support them____” Id. (citing Ornelas, 517 U.S. at 699, 116 S.Ct 1657). We view the evidence in the light most favorable to the Commonwealth. See Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).
The initial stop of the defendant was a valid stop for driving with a broken headlight at night, which the defendant con *730 cedes. Following the deputy’s investigation for that offense, the defendant was free to leave, but before he left, the deputy asked for permission to search the defendant’s van. The defendant contends that the deputy’s request and subsequent actions constituted a seizure. We disagree and hold that the lawful detention flowed immediately into a consensual encounter.
A consensual encounter can follow a legitimate detention. See Ohio v. Robinette, 519 U.S. 33, 39-40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (holding that consensual encounter may begin after legitimate detention has ended even if detainee is not told he is free to go). Consensual encounters “ ‘need not be predicated on any suspicion of the person’s involvement in wrongdoing,’ and remain consensual ‘as long as the citizen voluntarily cooperates with the police.’ ” Payne v. Commonwealth, 14 Va.App. 86, 88, 414 S.E.2d 869, 870 (1992) (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir.1991)). See McGee, 25 Va.App. at 198, 487 S.E.2d at 261; Iglesias v. Commonwealth, 7 Va.App. 93, 99, 372 S.E.2d 170, 173 (1988). Without some indicated restraint, mere questioning by officers when a routine traffic stop is over and its purpose served does not amount to a seizure under the Fourth Amendment. See United States v. Sullivan, 138 F.3d 126, 131 (4th Cir.1998).
A person is “seized” under the Fourth Amendment when “a reasonable person would have believed that he was not free to leave.” Mendenhall v. United States, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). In order for a seizure to occur, a police officer “must restrain a citizen’s freedom of movement by the use of physical force or show of authority.” Ford v. City of Newport News, 23 Va.App. 137, 142, 474 S.E.2d 848, 850 (1996) (citing California v. Hodari D., 499 U.S. 621, 625, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). See Thomas v. Commonwealth, 24 Va.App. 49, 54, 480 S.E.2d 135, 137 (1997) (en banc). Questions alone do not amount to a seizure. See Mendenhall, 446 U.S. at 553-54, 100 S.Ct. 1870. “So long as the [individual] to whom the questions are put *731 remains free to disregard the questions and walk away,” no Fourth Amendment violation has occurred. Id. See Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Buck v. Commonwealth, 20 Va.App. 298, 301-02, 456 S.E.2d 534, 535 (1995).
Under the circumstances of this case, a reasonable person would have believed that the investigation had ended and that he was free to leave. See Wechsler v. Commonwealth, 20 Va.App. 162, 171, 455 S.E.2d 744, 748 (1995). The deputy engaged the defendant in a consensual encounter following a lawful detention for defective equipment. Immediately after telling the defendant he was “free to go,” the deputy asked the defendant whether he had any contraband or weapons and whether he would permit the deputy to search the vehicle. The defendant eventually exited the vehicle without being asked to do so. Under these facts, the continued encounter did not constitute a seizure. The deputy did not seize the defendant when he began asking to search. Compliance with a police request does not negate the consensual nature of the response. See Baldwin v. Commonwealth, 243 Va. 191, 197, 413 S.E.2d 645, 648 (1992); Greene, 17 Va.App. at 610, 440 S.E.2d at 140-41. Considering the totality of the circumstances, we hold that a reasonable person would have believed he was free to leave and could have declined to stay and answer the deputy’s questions.
The trial court ruled that the deputy could frisk for weapons because he had a reasonable, articulable suspicion that the defendant was armed and dangerous. However, the defendant argues that the frisk was not permissible unless the deputy had reasonable suspicion that the defendant was engaged in criminal activity as well as a reasonable suspicion that he was armed and dangerous. We disagree.
A protective frisk for weapons is an intrusion upon an individual’s personal privacy that implicates the Fourth Amendment. See Adams v. Williams, 407 U.S. 143, 147 n. 2, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); Toliver v. Commonwealth, 23 Va.App. 34, 36, 473 S.E.2d 722, 724 (1996). The *732 reasonableness of an intrusion is determined by “balancing an individual’s right to be free from arbitrary government intrusions against society’s countervailing interest in preventing or detecting crime and in protecting its law enforcement officers.” Bethea v. Commonwealth, 14 Va.App. 474, 476, 419 S.E.2d 249, 250 (1992) (en banc) (citation omitted), aff'd on other grounds, 245 Va. 416, 429 S.E.2d 211 (1993). Officer safety is among those interests against which personal rights must be balanced. See Knowles v. Iowa, 525 U.S. 113,-- -, 119 S.Ct. 484, 487-88, 142 L.Ed.2d 492 (1998) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); Maryland v. Wilson, 519 U.S. 408, 412-13, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); Pennsylvania v. Mimms, 434 U.S. 106, 108-09, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam); United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).
Virginia’s appellate courts have confirmed on several prior occasions that an officer need not have a reasonable suspicion that a person is engaged in criminal activity before protecting himself with a carefully limited frisk for weapons. Courts have approved frisks under circumstances in which an officer developed a reasonable suspicion that the person he lawfully confronted was armed and dangerous even though the officer did not have a particularized suspicion that the subject was involved in criminal activity. In Bethea v. Commonwealth, 245 Va. 416, 420, 429 S.E.2d 211, 213 (1993), which involved the lawful stop of a vehicle for a decal violation, the Supreme Court upheld the conviction of a passenger who was first removed from the car and later frisked though he was not suspected of criminal activity. In Moore v. Commonwealth, 25 Va.App. 277, 286, 487 S.E.2d 864, 868-69 (1997), which involved the lawful stop of a vehicle for speeding, this Court upheld an officer’s protective frisk of a passenger, stranded as a result of the stop, before the officer transported the passenger in his police cruiser. In Welshman v. Commonwealth, 28 Va.App. 20, 32, 502 S.E.2d 122, 128 (1998) (en banc), we held that police officers with probable cause to arrest a suspected drug dealer did not violate the Fourth Amendment when they *733 ordered bystanders to lie on the ground and frisked one bystander whose furtive actions caused an officer to believe he was armed and dangerous. Finally, in James v. Commonwealth, 22 Va.App. 740, 745-46, 473 S.E.2d 90, 92 (1996), in which officers were engaged in arresting the driver of a vehicle on a felony warrant, we held that the officers were justified in frisking a passenger who was jittery and failed to respond to an officer’s request to keep his hands in view.
In each of these cases, the officer involved had a duty to initiate the encounter which put him lawfully in the presence of the individual frisked. Under settled principles, in order to conduct a pat-down weapons frisk, an officer must (1) rightly be in the presence of the party frisked so as to be endangered if the person is armed and (2) have reasonable suspicion that the person is armed and dangerous. See 4 Wayne R. LaFave, Search and Seizure § 9.5(a), at 246 (3d ed. 1996). The requirement that an officer be rightly in the presence of the person frisked means that the officer must have a duty to be in the person’s presence, such as to execute a search warrant or to conduct an investigatory stop or arrest of some other person. See id. at 247 (citing Terry, 392 U.S. at 32-33, 88 S.Ct. 1868 (Harlan, J., concurring)). Such a duty existed in Bethea, Moore, Welshman and James. Conversely,
a frisk for self-protection cannot be undertaken when the officer has unnecessarily put himself in a position of danger by not avoiding the individual in question. This means that in the absence of some legitimate basis for the officer being in the immediate proximity of the person, a degree of suspicion that the person is armed which would suffice to justify a frisk if there were that basis will not alone justify such a search.
LaFave, supra, at 247 (footnote omitted).
Extrapolating from these principles, we hold that where a lawful encounter based on reasonable suspicion or probable cause flows immediately into a consensual encounter, an officer remains lawfully in the presence of the individual previously detained for purposes of conducting a pat-down *734 search. Therefore, the officer may frisk the individual for weapons if he develops a reasonable suspicion that the individual may be armed and dangerous.
Here, the evidence may not have provided an objectively reasonable suspicion that the defendant was engaged in criminal activity during the consensual portion of the encounter. However, because it did establish that the deputy was rightly in the defendant’s presence and that he had an objectively reasonable suspicion that the defendant was armed and dangerous, we hold that the frisk for weapons was lawful. The consensual encounter in this case followed immediately on the heels of a lawful detention. It did not involve an initial encounter that the deputy was at liberty to avoid. Both circumstances warranted and duty demanded a forced encounter.[1]
Upon completing the traffic stop, the deputy told the defendant he was “free to go” before beginning the consensual portion of the encounter during which he asked for permission to search the defendant’s van. Although the portion of the encounter that continued after the initial lawful stop had terminated was consensual, the deputy remained vulnerable as long as the encounter continued. In the precarious moments as the defendant suddenly and unexpectedly emerged from the van, the deputy acquired a reasonable suspicion that he might be armed. The deputy observed a bulge in the defendant’s right front pocket and asked him what it was. On receiving no answer but seeing the defendant move his hand toward the bulge and attempt to cover it up, the deputy for the first time touched the defendant. He felt a large, hard bulge and believed it could be a weapon. The defendant continued to evade the deputy’s questions about what was in his pocket, so the deputy ordered him to remove the object. *735 It was a smoking device with marijuana residue and gave the deputy probable cause to arrest the defendant.
These facts show that the deputy did not pat the defendant down for weapons immediately upon seeing the bulge in the defendant’s- pocket. See Stanley v. Commonwealth, 16 Va. App. 873, 876-77, 433 S.E.2d 512, 514-15 (1993) (holding that officer’s observation of bulge in clothing of driver of motor scooter during traffic stop was insufficient to support pat-down for weapons unless bulge was of size or shape to warrant reasonable suspicion that it could be a weapon or other facts supported reasonable suspicion that driver was armed and dangerous). Rather, the deputy made graduated responses to escalating concerns that the defendant was armed and dangerous. The deputy made reasonable, carefully measured inquiry regarding the bulge in the defendant’s pocket, but at each level of inquiry, his suspicions were not dispelled; they were heightened. When the deputy finally touched the defendant by patting the bulge, he did seize the defendant, but by then he had developed reasonable suspicion to believe that the defendant was armed.
This case involved an encounter at close range. The deputy was vulnerable before he told the defendant he was “free to go,” he remained vulnerable after making that statement, and he became particularly vulnerable when the defendant began to exit the van. Under all the circumstances of this case, the deputy’s actions were reasonable and constituted a permissible interference with the defendant’s personal security as permitted under Terry, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and its progeny. “Based on the inordinate risk of danger to law enforcement officers during traffic stops, observing a bulge that could be made by a weapon in a suspect’s clothing reasonably warrants a belief that the suspect is potentially dangerous, even if the suspect was stopped only for a minor violation.” United States v. Baker, 78 F.3d 135, 137 (1996), cert. denied, — U.S.-, 118 S.Ct. 699, 139 L.Ed.2d 643 (1998). “The law does not expect a police officer must gamble on turning away from a possible danger and *736 chance taking a bullet in the back....” Lansdown v. Commonwealth, 226 Va. 204, 212, 308 S.E.2d 106, 111 (1983), cert. denied, 465 U.S. 1104, 104 S.Ct. 1604, 80 L.Ed.2d 134 (1984).
We hold that the frisk for weapons was reasonable under the facts of this case and that the trial court, therefore, properly denied the motion to suppress. Accordingly, we affirm the defendant’s conviction.

Affirmed.

. Because the deputy had a duty to insist upon the initial confrontation, the consensual encounter immediately following it was not the type that concerned Justice Harlan in his concurring opinion in Terry, 392 U.S. at 32-33, 88 S.Ct. 1868. This deputy did not have the right to avoid the defendant. He did not simply walk up to and begin questioning a citizen without any suspicion of criminal activity.