Celot CARR, Appellant,

v.

UNITED STATES, Appellee.

No. 98–CF–38.

District of Columbia Court of Appeals.

Argued April 5, 2000.
Decided Aug. 31, 2000.

Donald W. Whitehead, Jr., Ellicott City, MD, appointed by this court, for appellant.

Yvonne O. Lee, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Assistant United States Attorney, were on the brief, for appellee.

Before GLICKMAN, Associate Judge, and KERN and MACK, Senior Judges.

MACK, Senior Judge:

In this court, appellant Carr challenges his conviction on one count of possession with intent to distribute cocaine in a drug free zone (in violation of D.C.Code §§ 33–541(a)(1) and –547.1), and the denial of his motions to suppress evidence because of constitutional violations. Appellant argues here that the Fourth Amendment was violated when a police officer physically grabbed, and then questioned him, without having a reasonable, articulable suspicion that he was committing a crime. We agree with this contention and, therefore, reverse.

## I.

Prior to trial, appellant moved to suppress, alleging that both his stop and his arrest were unjustified. After a hearing the motions court found the following facts.[1]

On the evening of May 30, 1997, Officer Joseph Cabillo of the Metropolitan Police Department was on patrol in a high crime area with three other officers in an un-

marked police car. The officers were in plain clothes, and wore bullet proof vests emblazoned with the word "Police." Following behind Officer Cabillo's vehicle was another unmarked police car with another four officers. Officer Cabillo spotted a car parked at an angle in a space in the parking lot at 2638 Birney Place, S.E.[2] Appellant stood outside of the car, on the driver's side, talking with the three occupants of the car. G.B., a juvenile, stood on the passenger side of the car, smoking what appeared to be a marijuana cigarette. The police noticed a very strong odor of burnt marijuana in the air, presumably attributable to G.B.'s cigarette. There did not appear to be any interaction between appellant and G.B. Appellant's behavior was innocuous, and the police had no grounds to believe that he was engaged in criminal activity. Moreover, the eight policemen, on regular patrol, had no reasonable basis to fear for their own safety. Nonetheless, upon their arrival, the police specifically intended not only to arrest G.B., but also to "pat down" everyone within the parking lot, including appellant.

As the police neared, appellant looked in their direction and G.B. flicked his cigarette to the ground. As Officer Cabillo alighted from his car, appellant put his hands in his pocket, and leaned into the window of the car, as if in conversation with the occupants. Appellant did not place any object into his pocket, nor was there any suspicious bulge in the pocket. Nothing about appellant's action could be considered furtive or threatening.

Officer Cabillo approached appellant, pulled him away from the door frame of the car, and asked him if he "had anything illegal on him." At this point, appellant

---

1. We defer to the motions court's findings of fact unless "clearly erroneous." *Lawrence v. United States,* 566 A.2d 57, 60 (D.C.1989). In reviewing the motion to suppress, "the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court's ruling." *Anderson v. United States,* 658 A.2d 1036, 1038 (D.C.1995).

2. No one has suggested that this in any way qualified as a traffic violation, and the trial court found "that that wasn't what this was about any way."

appeared nervous and he did not reply. When Officer Cabillo reiterated his query, appellant then responded, "yes, in my right pocket." After this admission, Cabillo searched appellant's pockets and discovered fifty rocks of crack cocaine in the right pocket and a cellular phone and pager in the left pocket.

■ The motions court, considering it "a very close question," and indicating that it welcomed review, denied appellant's motion to suppress evidence, concluding: (1) based on *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the stop was justified because it was reasonable for the police to order appellant away from the door frame "the way it would be reasonable for an officer to order everybody out of the car to get him away from the scene;" (2) as a *Terry*[3] stop, pursuant to *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the police questioning did not constitute custody for *Miranda*[4] purposes; and (3) once appellant indicated that he had contraband, the police had probable cause to search. We review these legal conclusions *de novo. See Hawkins v. United States*, 663 A.2d 1221, 1225 (D.C. 1995).

## II.

■ The police lacked reasonable articulable suspicion to stop appellant at all. For that reason, we need not reach the *Miranda* issues generated by these facts.[5]

## A.

■ The Fourth Amendment provides in part, "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." "Unquestionably [appellant] was entitled to the protection of the Fourth Amendment as he" stood next to a car in the District of Columbia. *Terry, supra* note 3, 392 U.S. at 9, 88 S.Ct. 1868. We first consider when the Fourth Amendment protections were implicated.

■ "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id.* at 16, 88 S.Ct. 1868. "The crucial test for determining whether a person has been seized is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Hawkins*, 663 A.2d at 1225 (quoting *In re J.M.*, 619 A.2d 497, 499–500 (D.C.1992) (en banc) (citations and quotations omitted)). Application of physical force is a seizure. *See California v. Hodari D.*, 499 U.S. 621, 625, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Thus, when a member of a large "jumpout" team pulled appellant from the door frame of the car into which he was leaning, the police "seized" appellant for Fourth Amendment purposes and appellant reasonably understood that he was not free to ignore the police presence.

■ "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry, supra* note 3, 392 U.S. at 21, 88 S.Ct. 1868. This court must consid-

---

**3.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**4.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** Appellant argues that Officer Cabillo's failure to advise him of his rights before questioning him violated *Miranda, supra* note 4. *See Berkemer*, 468 U.S. at 440–41, 104 S.Ct.

3138; *Dickerson v. United States*, —— U.S. ——, ——, 120 S.Ct. 2326, 2331, 147 L.Ed.2d 405, 2000 U.S. LEXIS 4305, at *14 (U.S.2000) ("'[T]he coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be accorded his privilege under the Fifth Amendment not to be compelled to incriminate himself.'") (citation and quotations omitted).

er if the "facts available to the officer at the moment of the seizure ... warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id.* at 22, 88 S.Ct. 1868 (quotations omitted). The Supreme Court has stressed the importance of "individualized suspicion" as an essential prerequisite to a valid search or seizure under the Fourth Amendment (other than in exceptional circumstances not present here, *e.g.*, administrative inspections of closely regulated businesses and fixed Border Patrol or sobriety checkpoints). *See Chandler v. Miller*, 520 U.S. 305, 308, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997).

In this case, we are faced with an officer who saw appellant standing next to a car, on the other side of which was G.B. smoking marijuana. Nothing connected the two. Nothing about G.B.'s nearby behavior provided reasonable suspicion as to appellant. The officer's suspicion was generated by appellant looking at the police, placing his hand in his pocket and then sticking his head in the open window of the car as if he were having a conversation with the occupants. The trial court expressed doubt as to whether this amounted to reasonable suspicion, but never reached the question, analogizing to *Mimms*.[6] We hold that this innocent behavior in no way provided reasonable suspicion that justified the seizure.[7]

### B.

■ We decline the government's invitation to find an exception to the reasonable suspicion requirement, based primarily on traffic stop cases and their rationale, that would allow police officers to "freeze the situation" and have court approval to act as they did in this instance.[8] *Mimms*, and its progeny, *Berkemer*, and *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), are all cases involving legitimate traffic stops. In those cases, the reasonable articulable suspicion that justifies the initial stop is the traffic violation. *See Mimms*, 434 U.S. at 109, 98 S.Ct. 330; *Berkemer*, 468 U.S. at 422, 104 S.Ct. 3138; and *Wilson*, 519 U.S. at 410, 117 S.Ct. 882. There is no automatic right for police to order occupants out of a car. *Mimms*, 434 U.S. at 111 n. 6, 98 S.Ct. 330 ("[W]e do not hold today that whenever an officer has occasion to speak with the driver of a vehicle, he may also order the driver out of the car. We hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.") (internal quotations omitted). Thus, analogizing to *Mimms* ignores the fact that here the initial stop was unjustified, and focuses solely on the reasonableness of what happened in the encounter without considering why there was an encounter.

The government cites us to *Welshman v. Commonwealth*, 28 Va.App. 20, 32, 502 S.E.2d 122, 128 (1998) (en banc), but that

---

**6.** The dissent focuses on whether the actions taken by the police were reasonable. In the context of a *Terry* stop, a seizure is unreasonable unless supported by individualized suspicion.

**7.** Appellant's apparent nervousness would not have been witnessed but for the seizure, and cannot be included in the calculus of whether the police had justification to seize appellant. The fact that this took place in a high drug area is also of questionable relevance. *See Duhart v. United States*, 589 A.2d 895, 899–900 (D.C.1991). The totality of all the circumstances simply does not provide the requisite justification for the police intrusion.

**8.** There is some support for this argument in *Bsharah v. United States*, 646 A.2d 993, 997 (D.C.1994), where this court held that a brief detention of a wife (who volunteered that she and her husband were gun dealers, and whose husband was stopped for possessing a gun), in order to find out whether she had a gun, was reasonable. But the holding was premised on the reasonable *suspicion* created by her relationship with her husband (not present in this case) and her own admissions. *Bsharah* does not stand for the proposition that someone may be stopped and questioned absent reasonable suspicion.

case is distinguishable. There, police, who had probable cause to arrest two individuals for a drug transaction, and who were outnumbered in a high crime open-air drug market, ordered everyone in the vicinity to lie prone with their arms out, while the police arrested the two targeted individuals. When Welshman kept his arms at his torso, the police feared that he was reaching for a weapon, and patted him down, finding narcotics. *Welshman* "held that police officers with probable cause to arrest a suspected drug dealer did not violate the Fourth Amendment when they ordered bystanders to lie on the ground and frisked one bystander whose furtive actions caused an officer to believe he was armed and dangerous." *Reittinger v. Commonwealth,* 29 Va.App. 724, 732–33, 514 S.E.2d 775, 779 (1999). There, the justification for the seizure was a safety concern that was absent in this case.

We decline to impute safety concerns where the motions court found there were none.[9] The record demonstrates that the police lacked both subjective and objective concerns for their safety in this situation. Those intrusions that are permissible in the name of officer safety are not permissible absent concerns for officer safety. As this court has recently reiterated:

> The officer's testimony made it clear that he thought that appellant had drugs in his [pocket] when he grabbed him. We cannot impute a safety concern to the trained officer where he did not indicate in any way that he apprehended danger and where the evidence does not otherwise support such a claim. Nor can this court impute a safety concern from the mere fact that the officers believed appellant was [involved with] drugs. Although we have recognized

that "drugs and weapons go together," that connection standing alone is insufficient to warrant a police officer's reasonable belief that a suspect is armed and dangerous, and we have never so held. *Jackson v. United States,* 742 A.2d 883, 885 (D.C.1999) (quoting *Upshur v. United States,* 716 A.2d 981, 984 (D.C.1998) (citation omitted)).

Accordingly, the fruits of the impermissible seizure must be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

*Reversed and remanded.*

KERN, Senior Judge, dissenting:

With deference, I am unable to agree upon the particular facts and circumstances of this case that the police violated either appellant's Fourth Amendment right to be free from an unreasonable search and seizure or his Fifth Amendment right not to be compelled to incriminate himself.

The record reflects that two quartets of police officers were patrolling in each of two unmarked cars on the lookout for drug violations in response to neighborhood complaints of illicit drug activity.[1] They observed an auto parked askew in a parking lot adjacent to an apartment development known to them to have had prior activities involving drugs. They saw four men seated inside this auto, another man standing outside this auto on the passenger side smoking a marijuana cigarette, and appellant standing on the driver's side of this parked car. Appellant, upon seeing the officers, thrust his head inside the parked car. The officers intended (a) to arrest the marijuana smoker on the other

---

9. Unlike the District of Columbia Circuit Court of Appeals, this court has never imputed a safety concern on the basis that guns and drugs go together. *See, e.g., United States v. Smart,* 321 U.S.App.D.C. 216, 222, 98 F.3d 1379, 1385 (1996).

1. I think it important to note that the police here were not on their patrol randomly harassing citizens, but rather were responding to residents' complaints.

side of the car, and (b) to investigate what the four men inside the parked car were doing. One officer ordered appellant · to remove himself and step back from the parked car.[2] It is my view that this particular police action, viz, removing appellant's head from inside a parked car containing four other men, did not constitute a violation of appellant's Fourth Amendment rights. Rather, under established case law, this was an appropriate police reaction of sorting out and clarifying the situation they confronted. *See Pennsylvania v. Mimms*, 434 U.S. 106, 108–109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (police ordered driver out of car after traffic stop); *Cousart v. United States*, 618 A.2d 96, 100–101 (D.C.1992) (en banc) (police ordered passengers to put hands in view); *Welshman v. Commonwealth*, 28 Va.App. 20, 32, 502 S.E.2d 122, 127–28 (1998) (en banc) (police ordered people in immediate proximity to suspects to lie on ground).

When the lead officer asked appellant (and then repeated his question after appellant gave no answer) whether he was carrying anything illegal, appellant replied "yes," and that it was in his right pants pocket. Upon receiving this information, the officer searched appellant and found proscribed drugs on his person. I am unable to conclude under applicable precedent that this particular police action, viz, asking appellant within the presence of five other civilians and seven other police officers in daylight on a parking lot in the heart of the city, constituted a coercive and custodial interrogation in violation of appellant's Fifth Amendment right not to incriminate himself. Mr. Justice Thurgood Marshall, surely no shrinking violet when it comes to protecting civil liberties, articulated in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the following with reference to questioning motorists after a traffic stop:

In the years since the decision in *Miranda*, we have frequently reaffirmed the central principle established by that case: *if the police take a suspect into custody* and then ask him questions without informing him of the rights [conferred by the Fifth Amendment], his responses cannot be introduced into evidence to establish his guilt.... [Q]uestioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek.... [T]he typical traffic stop is public, at least to some degree. Passersby, on foot or in other cars, witness the interaction of officer and motorist. This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse. [*Id.* at 429, 438, 86 S.Ct. 1602; emphasis added.]

The police action in the instant case, *i.e.*, removing appellant's head and shoulders from inside the auto where four men sat and by which a fifth man stood smoking marijuana, is far less intrusive than a traffic stop *and* a removal from an auto of its driver, which was the case in *Berkemer* where Justice Marshall concluded that the questioning of the person thus stopped and then questioned "outside the stationhouse" and in "public view" did not constitute the custodial interrogation that *Miranda* forbids under the Fifth Amendment.

Accordingly, I agree with the conclusion that the conscientious trial judge made after careful analysis of existing precedent upon the facts here that the police did not

---

**2.** There was some testimony that the officer physically moved appellant away from the

auto in which the four men were sitting and

violate appellant's constitutional rights. Accordingly, I would affirm the judgment of conviction.[3]

beside which the fifth man was smoking marijuana.

3. I respectfully suggest that this decision has a chilling effect on appropriate police actions of controlling and clearing a crime scene and questioning those who are on the scene and may be involved.