Tyrone TRICE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 00–CF–65, 00–CF–893.

District of Columbia Court of Appeals.

Argued Dec. 17, 2002.
Decided May 13, 2004.

---

Joanne Vasco, appointed by this court, Washington, for appellant.

Ann M. Carroll, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Roy W. McLeese III, Assistant United States Attorneys, were on the brief, for the appellee.

Before TERRY, RUIZ and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge.

That police have legally sufficient grounds to stop a particular person who they suspect has committed a crime, *see* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is usually not a sufficient justification in itself for stopping the suspect's companions or other bystanders too. But that usual rule tolerates exceptions for exigent circumstances. In this case we hold that when police validly stopped a person whom they reasonably suspected of being armed, dangerous, and escaping from the scene of a violent crime, the police validly could stop the suspect's companion, appellant Tyrone Trice, as well.

## I.[1]

At 11:40 p.m. on April 4, 1998, a police dispatcher broadcast a lookout for the suspect in a stabbing ("ADW knife") at Hadley Hospital. The dispatcher reported that the suspect, described as a Black male wearing a black, red and white shirt, had left the hospital "between one and five minutes ago" and was heading towards Elmira Street. About two minutes after they heard the lookout, Detective Richard Espinosa saw two men walking side by side in the 4300 block of 1st Street, half a mile from the hospital. The men were walking in the direction of Elmira Street, which was just a block or two away. One of the men, who was identified later as Anthony Castle, fit the description in the lookout. The other man, who did not match the description, was Tyrone Trice. Detective Espinosa drew his service weapon and ordered both men to stop and put their hands on his car. The two men complied.

As this was taking place, Officer Darryl Garner pulled up, exited his scout car, and joined Detective Espinosa. Like the detective, Officer Garner concededly had "no reason to believe" that Trice had engaged in any criminal activity. As Trice leaned over and put his hands on Detective Espinosa's car, however, Officer Garner saw "something silver inside of his right front coat pocket." The object looked, Officer Garner later testified, "like a little small handgun. Something real small." Officer Garner proceeded to frisk Trice for weapons and discovered that the object was indeed a handgun. In the ensuing search

---

1. We state the material facts as the trial judge found them based on the evidence adduced at the hearing on Trice's motion to suppress evidence. Although Trice points to certain conflicts in the testimony, in our view the judge's material findings are unassailable.

incident to Trice's arrest, Officer Garner also recovered marijuana and an extra ammunition clip from Trice's pockets.[2]

Trice was indicted on charges of carrying a pistol without a license, possession of an unregistered firearm, unlawful possession of ammunition, and unlawful possession of a controlled substance. Prior to trial, Trice moved on Fourth Amendment grounds to suppress the evidence that Officer Garner had seized from him. At the hearing on that motion, Trice did not dispute that the police had a sufficient basis to stop Anthony Castle as a person who fit the description of the suspect in the stabbing incident at Hadley Hospital. Nonetheless, Trice argued, the police had no information connecting *him* with that incident, and his mere association with Castle did not support a reasonable articulable suspicion that he was involved in any criminal offense. "Guilt by association," Trice contended, cannot justify a *Terry* stop.

After taking the motion to suppress under advisement, the trial judge issued her ruling. Relying on this Court's decision in *Lewis v. United States*, 399 A.2d 559 (D.C. 1979), the judge concluded that Detective Espinosa acted reasonably in stopping Trice because Trice was accompanying someone who fit the description of the suspect in an armed assault that had occurred nearby just minutes earlier. The judge found it unnecessary to decide whether those facts also made it reasonable for Officer Garner to frisk Trice for weapons, for even if not, Officer Garner's additional observation of a small silver object in Trice's pocket that could have been a handgun provided sufficient justification under *Terry* to conduct the frisk. Accordingly, the judge upheld the seizure of the handgun, marijuana and ammunition clip

as lawful and denied Trice's motion to suppress.

Following the judge's ruling, Trice entered conditional guilty pleas to the charges against him, reserving his right to appeal the denial of his motion to suppress. *See* Super. Ct.Crim. R. 11(a)(2).

## II.

■ "Whether reasonable suspicion or probable cause exists to justify a seizure is a mixed question of fact and law. The findings with respect to the historical facts are reviewed under the clearly erroneous standard; the ultimate conclusion, however, is subject to de novo review." *Brown v. United States*, 590 A.2d 1008, 1020 (D.C. 1991). Thus in this appeal, where the record supports the trial judge's material factual findings, we must reach "an independent legal conclusion as to whether there was reasonable suspicion for the stop." *Speight v. United States*, 671 A.2d 442, 446 (D.C.1996).

■ When Detective Espinosa aimed his weapon at Trice and ordered him, along with Castle, to put his hands up against a car, Trice was "seized" within the meaning of the Fourth Amendment. *See United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The Fourth Amendment permits a seizure of this sort—a forcible stop of a person for investigative purposes where probable cause to arrest is lacking—if the police officer has a reasonable suspicion "supported by specific articulable facts" that warrants the intrusion. *Terry*, 392 U.S. at 21, 88 S.Ct. 1868. And if the officer has a reasonable articulable suspicion of a crime of violence, or that the person lawfully stopped may be armed and dangerous,

---

2. As it happened, Castle was released; evidently he was not the man being sought for the stabbing at Hadley Hospital.

then a limited frisk for weapons is likewise permissible and may be "immediate and automatic." *Id.* at 33, 88 S.Ct. 1868 (Harlan, J., concurring).[3] An inchoate "hunch" is not enough of a basis for such intrusions, but a reasonable suspicion can be supported by "specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." *Id.* at 27, 88 S.Ct. 1868. Ordinarily, though, the officer "must have a particularized and objective basis for suspecting *the particular person stopped* of criminal activity." *Mayes v. United States,* 653 A.2d 856, 861 (D.C.1995) (internal quotation marks and citations omitted)(emphasis added). "The Supreme Court has stressed the importance of 'individualized suspicion' as an essential prerequisite to a valid search or seizure under the Fourth Amendment (other than in exceptional circumstances...)." *Carr v. United States,* 758 A.2d 944, 947 (D.C.2000) (citing *Chandler v. Miller,* 520 U.S. 305, 308, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997)).

Accordingly, we have rejected "guilt by association" as a basis for reasonable suspicion to support a *Terry* stop. For example, in *Carr,* police came upon a person who was standing next to a car and smoking a marijuana cigarette. We held that this did not provide the police with reasonable articulable suspicion to stop another person who was merely standing on the other side of the vehicle and talking with its occupants. 758 A.2d at 947. In another case, *Smith v. United States,* 558 A.2d 312 (D.C.1989)(en banc), an undercover police officer purchased narcotics from two individuals. As other officers then closed in to make arrests, they observed a third person speaking to the suspects. *Id.* at

313. The court held, *inter alia,* that "[t]he conversation without more ... did not justify a *Terry* seizure because it would have been based solely on guilt by association, which is not enough." *Id.* at 318. The dissenting judges agreed that "the threshold requirement for *Terry* stops should not be set so low that a person's neighborhood or choice of friends would itself provide a basis for police stops or seizures." *Id.* at 321. In coming to these conclusions, we followed Supreme Court precedent. *See Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) ("a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."); *Sibron v. New York,* 392 U.S. 40, 62, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (absent any signs of actual narcotics transactions, "[t]he inference that persons who [merely] talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security.").

■■■■ Despite the general rule, immediate safety concerns may justify police in stopping, or stopping and frisking, a person based on his association with someone else whom the police reasonably suspect of criminal activity. The officers in *Lewis v. United States, supra,* stopped and frisked the appellant after seeing his companion ineffectively attempt to conceal a gun wrapped in a sweater he was carrying. The presence of the gun must have been as apparent to the appellant as it was to the police. In upholding the frisk under *Terry,* the court thought it "wholly reasonable" in the circumstances for the officers

---

3. Thus, the right to frisk depends on whether the police "first have constitutional grounds to insist on an encounter, to make a *forcible* stop" of the person involved. *Id.* at 32, 88 S.Ct. 1868 (emphasis in original); *accord, Gomez v. United States,* 597 A.2d 884, 891 (D.C. 1991).

to suspect that the appellant "also might be armed and dangerous." 399 A.2d at 562. In addition, the court stated, it agreed with the following reasoning of the Ninth Circuit:

> *Terry* recognizes and common sense dictates that the legality of such a limited intrusion into a citizen's personal privacy extends to a criminal's companions at the time of arrest. It is inconceivable that a peace officer effecting a lawful arrest ... must expose himself to a shot in the back from defendant's associate because he cannot on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance. All companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory "pat-down" reasonably necessary to give assurance that they are unarmed.

*Id.* at 561–62 (quoting *United States v. Berryhill,* 445 F.2d 1189, 1193 (9th Cir. 1971)). Since the *Berryhill* rationale does not depend on the existence of a reasonable suspicion that is particular to the person frisked, it is broader than the precise basis on which this court actually upheld the frisk in *Lewis.* In *Mayes,* though, we relied explicitly on *Berryhill* in holding that after police recovered a pistol from one occupant of a stopped car, they had a right under *Terry* to frisk the other occupants. 653 A.2d at 865. We had already upheld lesser intrusions on similar rationales. For instance, in *Cousart v. United States,* 618 A.2d 96, 100 (D.C.1992) (en banc), the court held that "[i]n briefly freezing the situation [by ordering passengers in a car being pursued and stopped for more than just a traffic violation to raise their hands in the air] while they ascertained the extent of the criminal activity in progress, the officers took reasonable steps to insure their safety." [4] *See also Bsharah v. United States,* 646 A.2d 993, 997 (D.C.1994) (holding that an officer who saw Bsharah's companion, her husband, with a handgun in a crowded train car reasonably removed both of them from the train to the station platform in order to control the situation and reduce the risk of harm to other passengers; the resulting brief detention of Bsharah was "a permissible response to an uncertain and potentially volatile situation"). These cases demonstrate that immediate safety concerns, so long as they are reasonable under the circumstances, will justify the police in stopping, or stopping and frisking, the companion of a person whom the police have reason to seize, even if the police have no particularized suspicion that the companion is armed, dangerous, or engaged in criminal activity.[5] "As a society, we routinely expect police officers to risk their lives in apprehending dangerous people. We should not bicker if in bringing potentially dangerous situations under con-

---

4. *Cousart* presaged *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), in which the Supreme Court extended *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), and held that police may order passengers as well as the driver to exit a vehicle stopped for a traffic infraction. Such directives are reasonable under the Fourth Amendment because the passengers are already lawfully stopped and "the additional intrusion on the passenger is minimal," while the "danger to an officer from a traffic stop is likely to be great-

er when there are passengers in addition to the driver." 519 U.S. at 414–15, 117 S.Ct. 882.

5. In contrast, in *Carr, supra,* we held that the Fourth Amendment did not allow police officers to "freeze the situation" by forcibly restraining bystanders where the officers merely saw an individual smoking a marijuana cigarette and had no legitimate safety concerns. 758 A.2d at 947–48.

trol they issue commands and take precautions which reasonable men are warranted in taking." *Bailey v. United States,* 128 U.S.App. D.C. 354, 364, 389 F.2d 305, 315 (1967).

Whether the police could forcibly stop persons who themselves were not suspects was also at issue in *Williamson v. United States,* 607 A.2d 471 (D.C.1992). In *Williamson,* police responding to gunfire stopped a car that was leaving the scene. *See id.* at 472 ("His gun still holstered, [Officer] Schadt asked the driver to stop and directed the three occupants to raise their hands."). A majority of the court concluded that the police did not have a reasonable articulable suspicion that any of the car's occupants were participants in the shooting. *See id.* at 478 (Schwelb, J., concurring); *id.* at 481 (Ferren, J., dissenting). A majority of the court also concluded, however, that the police reasonably could believe that if the occupants were not participants in the shooting, they were at least witnesses to it, and this was enough to justify stopping them to "freeze" the situation and enable the police to investigate. *See id.* at 476 (Farrell, J. concurring); *id.* at 479 (Schwelb, J., concurring). The detention was not justified as a precautionary measure for the immediate safety of the officer or others in the vicinity. Rather, the circumstances were exigent in other respects—there had been a recent crime of violence, and "[s]hort of the stop of appellant's vehicle, there was no reasonable way in which the officer could obtain immediate information about the shooting which these occupants could reasonably be expected to provide." *Id.* at 477. "The Fourth Amendment was not designed to consign to virtual impotence a police officer who is attempting to investi-

gate an apparent armed offense moments after it occurred, and who needs information to help him to apprehend the perpetrator and thus to reduce the risk of injury to persons or property." *Id.* at 481.[6]

Guided by the foregoing cases, we conclude that the Fourth Amendment permitted Detective Espinosa to stop Trice even if the detective lacked sufficient reason to suspect Trice of criminal activity. A violent crime involving the use of a knife reportedly had just been committed nearby, and Castle matched the description of the criminal. In confronting Castle, Detective Espinosa could not avoid confronting Trice as well. As he was walking with Castle, Trice appeared to be the companion of a potentially violent, fleeing criminal and not a mere bystander. Moreover, given the recency of the crime, it was reasonable to think that if Castle committed it, his companion Trice likely was aware of that fact and was a witness if not also an accomplice or an accessory after the fact.

On these facts it reasonably appeared that Trice posed a potential threat to an officer who was attempting lawfully to detain his friend on suspicion of a violent crime; for if Trice was not restrained, he might have tried to help Castle resist arrest or retaliate against the officer. Trice also potentially was an eyewitness who could furnish critical information about the stabbing at Hadley Hospital, if indeed he was not culpable himself. Under these circumstances, our cases make clear that it was prudent, and hence constitutionally permissible, for Detective Espinosa to "freeze the situation" briefly by forcibly detaining Trice along with Castle until help arrived.

6. Thus, Judge Farrell's concurrence noted, "[w]e have no occasion to decide here whether a potential eyewitness may be stopped when other, less violent forms of crime are involved or circumstances are less demanding of immediate police action than those presented here." *Id.* at 477.

As we conclude that the stop of Trice was lawful, we have no difficulty in concluding further that the frisk of Trice for weapons was lawful too. We need not decide whether the same reasons that justified the stop also justified the frisk. Once Officer Garner saw a small silver object in Trice's pocket that looked to him like a handgun (in fact, it was a handgun), the officer certainly had sufficient reasonable articulable suspicion that Trice was armed and dangerous to conduct a protective pat-down.

For the foregoing reasons, we uphold the trial judge's denial of Trice's motion to suppress evidence and affirm Trice's convictions.