PRESENT: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Kinser, JJ., and Stephenson, Senior Justice

CHRISTOPHER REITTINGER
                                        OPINION BY
v.  Record No. 991417    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                      June 9, 2000
COMMONWEALTH OF VIRGINIA


              FROM THE COURT OF APPEALS OF VIRGINIA


     In this appeal, we determine whether the Court of Appeals

erred in holding that the trial court correctly refused to

suppress certain evidence found during a search of the defendant

by a deputy sheriff.

                                I

     In a bench trial in the Circuit Court of Rockbridge County,

Christopher Reittinger was found guilty of possession of

marijuana, in violation of Code § 18.2-250.1, and fined $150.

The court also suspended Reittinger's driver's license for a

period of six months, pursuant to the provisions of Code § 18.2-

259.1.

     On July 21, 1998, a panel of the Court of Appeals reversed

Reittinger's conviction. Reittinger v. Commonwealth, 28 Va.

App. 80, 502 S.E.2d 151 (1998). Upon a rehearing en banc,

however, the Court of Appeals affirmed the conviction.

Reittinger v. Commonwealth, 29 Va. App. 724, 514 S.E.2d 775

(1999) (en banc).

On May 3, 1996, about 10:30 p.m., Deputy Sheriff Hugh Bolen stopped a van on Route 11 in Rockbridge County because the van had "only one operable headlight."  Deputy Bolen approached the driver's side of the van, and Deputy Max Smith approached the van's passenger side.  Deputy Bolen asked Reittinger, the driver, for his operator's license and vehicle registration and informed Reittinger that the van had only one illuminated headlight.  Thereupon, Reittinger displayed a new headlight that he said he planned to install the following day.  Deputy Bolen, having decided against issuing a citation, simply gave Reittinger a verbal warning.  Deputy Bolen then told Reittinger that he was "free to go."

Immediately thereafter, however, Deputy Bolen asked Reittinger whether he had any illegal weapons or drugs in the vehicle, and Reittinger stated that there was nothing illegal in the van.  Deputy Bolen then asked Reittinger for permission to search the van.  The deputy twice repeated the request to search while Reittinger appeared to consult with the passengers in the van.

Rather than answer the deputy, Reittinger exited the van. Deputy Bolen then saw a "large bulge" in Reittinger's right pants pocket and conducted a "pat down" search of Reittinger. The bulge felt "hard," and Deputy Bolen thought Reittinger might

be carrying a weapon. Deputy Bolen then ordered Reittinger to empty his pocket. Reittinger removed an object that proved to be a smoking pipe containing marijuana residue. Deputy Bolen testified that, when he requested consent to search the van, he had no reasonable and articulable suspicion of criminal activity on the part of Reittinger.

III

Reittinger contends that, under the facts of this case, the search was the product of an unlawful seizure and, therefore, was invalid. He further asserts that, assuming arguendo he was engaged in a consensual encounter with the deputy when he exited his vehicle, no legal justification existed for his seizure and search.

The Commonwealth contends that Reittinger was not unlawfully seized but that, after he was told that he was free to leave, he and the deputy were engaged in a consensual encounter following the completion of a lawful traffic stop. The Commonwealth further contends that, after Reittinger exited the vehicle and while the deputy and Reittinger continued to be engaged in a consensual encounter, the deputy saw a bulge in Reittinger's pocket that he believed could have been a weapon. Therefore, the Commonwealth asserts, the search of Reittinger was lawful because it was done for the deputies' protection.

In affirming the trial court's denial of Reittinger's motion to suppress, the Court of Appeals essentially adopted the Commonwealth's contentions.  The Court of Appeals held that,

> where a lawful encounter based on reasonable suspicion or probable cause flows immediately into a consensual encounter, an officer remains lawfully in the presence of the individual previously detained for purposes of conducting a pat-down search[, and, t]herefore, the officer may frisk the individual for weapons if he develops a reasonable suspicion that the individual may be armed and dangerous.

Reittinger, 29 Va. App. at 733-34, 514 S.E.2d at 779-80.

IV

The Fourth Amendment to the Federal Constitution provides, in pertinent part, that "[t]he right of the people to be secure in their persons, . . . and effects, against unreasonable searches and seizures, shall not be violated."  It is firmly established that warrantless searches and seizures are per se unreasonable, subject only to a few specifically-established and well-delineated exceptions.  Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984).  Thus, "the Commonwealth has the burden of proving the legitimacy of a warrantless search and seizure."  Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989).  Whether the Fourth Amendment has been violated "'is a question of fact to be determined from all the circumstances.'"  Ohio v. Robinette, 519 U.S. 33, 40 (1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973)).

4

In considering a challenge under the Fourth Amendment, questions of reasonable suspicion and probable cause involve questions of both law and fact and are reviewed de novo on appeal.  Ornelas v. United States, 517 U.S. 690, 699 (1996); Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000).  Similarly, the question whether a person has been seized in violation of the Fourth Amendment is reviewed de novo on appeal.  See Schneckloth, 412 U.S. at 226; see also United States v. Mendenhall, 446 U.S. 544, 551 n.5 (1980).  An appellate court, however, "should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  Ornelas, 517 U.S. at 699.

In the present case, the trial court found that "[t]he deputy effectively seized [Reittinger] without probable cause and without an articulable suspicion to investigate further." *  The court further found that "[a] reasonable person . . . upon immediately being subjected to a new and unrelated inquiry would conclude his detention continued . . . and [that] the reasonable inference to be drawn from [Reittinger's] voluntarily exiting his vehicle is that [he] concluded he was not free to leave."

---

* A person is "seized" "only when, by means of physical force or a show of authority, his freedom of movement is restrained."  Mendenhall, 446 U.S. at 553.

5

Despite the trial court's conclusion that "[t]he detention of [Reittinger] after the investigation of the [traffic] violation was completed was illegal," the court ruled that the subsequent "pat down" search was justified for the deputies' protection.

While law enforcement officers may engage in consensual encounters with citizens, the Supreme Court has limited such encounters to those in which "a reasonable person would feel free 'to disregard the police and go about his business.' " Florida v. Bostick, 501 U.S. 429, 434 (1991) (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)); accord Florida v. Royer, 460 U.S. 491, 497-98 (1983) (plurality opinion). In the present case, Reittinger had been stopped in a rural area in the nighttime. He was in the presence of two armed deputies, one on each side of the vehicle. Deputy Bolen asked Reittinger to waive his Fourth Amendment right and consent to a search of the vehicle. When Reittinger did not respond, the deputy asked a second and then third time for consent to search. These requests for permission to search were made even though Deputy Bolen admitted that he "had no reasonable and articulable suspicion of criminal activity on the part of [Reittinger]."

Although Deputy Bolen had told Reittinger that he was free to go, we think that the events that transpired immediately thereafter would suggest to a reasonable person that just the opposite was the case. We do not think that a reasonable

person, under the circumstances, would have considered that he was free to disregard the deputies and simply drive away. Therefore, we conclude, from our <u>de novo</u> review of the facts, that Reittinger was unlawfully seized in violation of his Fourth Amendment rights; that the trial court, though correct about the seizure, erred in refusing to suppress the product of the unlawful seizure and search of Reittinger; and that the Court of Appeals erred in affirming the trial court's judgment.

Accordingly, we will reverse the judgment of the Court of Appeals, vacate Reittinger's conviction, and remand the case to the Court of Appeals with direction that the case be remanded to the trial court for further proceedings if the Commonwealth be so advised.

<u>Reversed and remanded</u>.