# CIRCUIT COURT OF SOUTHAMPTON COUNTY

Commonwealth of Virginia

v.

Curtis Ridley

October 27, 2000

Case No. CR00-451

BY JUDGE D. ARTHUR KELSEY

The Commonwealth accuses Curtis Ridley of possession of cocaine in violation of Va. Code Ann. § 18.2-250 (Michie 1996 & Supp. 2000). In his pretrial motion to suppress, Ridley claims the Commonwealth collected physical evidence against him in violation of the Fourth Amendment to the United States Constitution. See Defendant's Motion to Suppress (Sept. 20, 2000); Hearing Transcript at 3-6, 35-55 (Aug. 31, 2000). For the following reasons, the Court disagrees.

On February 12, 2000, Deputy Robert Barry of the Southampton County Sheriff's Department was on routine patrol in his marked sheriff vehicle. See Hearing Transcript at 7 (Aug. 31, 2000). As he drove south on Route 671, Deputy Barry noticed an automobile "swerve" after it passed him and move "about half a car across the center double lines." Id. at 9; see also id. at 10-11. After the swerving automobile turned onto Thomaston Road and passed a "dangerous curve" in the road, Barry "initiated the traffic stop." Id. at 11-12; see also id. at 28-29.

Deputy Barry asked the driver of the automobile, Curtis Ridley, for his operator's license and registration. Id. at 12. Deputy Barry returned to his

vehicle to run the "license check and registration check" on Ridley. Upon completing this task, Barry returned the license and registration to Ridley. *Id.* at 13. After a "short pause" that took a matter of "seconds," *id.* at 32, Deputy Barry asked Ridley for permission to perform a consensual search. As Barry recalls the conversation:

> Q: All right. Do you recall specifically the conversation that you had with him regarding the searching of his vehicle?
>
> A: Yes, sir. When I gave his license and registration back to him, I told him he was free to go. Then I said, "Can I ask you a question?" And he said, "What?" I asked Mr. Ridley if he — I told him we had a bad drug problem on the road going between Franklin and Boykins and I asked him if you mind if I searched his car. . . . I asked him if he minded if I searched the car.

*Id.* at 14; *see also id.* at 31-32.

In reply, Ridley said Deputy Barry "could search it." *Id.* at 15 (Ridley said "okay").[1] Ridley expressed some concern that Barry not "tear the car up" and that he "put everything back" after the search. Deputy Barry assured him he would do so. *Id.* Ridley then got out of the automobile while Barry looked around in the passenger compartment. Finding nothing, Deputy Barry asked if he could "look in the trunk" of the car. In response, "Ridley pulled his keys out of his pocket, unlocked the trunk," and advised Barry that he "could look through whatever." *Id.* at 16. Ridley, not Deputy Barry, "opened the trunk up." *Id.* at 21. Barry found a gym bag and asked Ridley if it was his. Ridley said "everything in the vehicle was his." *Id.* at 16-17. Deputy Barry opened the bag in Ridley's presence and found a "suspected crack stem wrapped in a piece of paper towel." *Id.* at 17. "It was a glass tube with burn marks on one end." *Id.* During this time frame, a backup officer, Deputy Morris, had arrived and stopped his vehicle behind Deputy Barry's. *Id.* at 15-17. Deputy Morris stood by the passenger side of Deputy Barry's vehicle, "near the headlights," observing the interaction between Barry and Ridley. *Id.* at 15-16. After Barry discovered the crack stem in the trunk, Deputy Morris told Barry that Ridley had acted "extremely nervous" during the search of the passenger front seat and the glove box area. *Id.* at 17. Morris then searched that area a second time and found another "suspected crack stem" between the back of the passenger

---

[1] Deputy Barry would not have searched Ridley's vehicle had he not received Ridley's consent to do so. *See* Hearing Transcript at 32, 30.

seat and "the crack that goes down between it." *Id.* at 18. The officers arrested Ridley, the only occupant of the automobile, and read him his *Miranda* rights.

Ridley moves to suppress the evidence, *see generally* Va. Code Ann. § 19.2-60 (Michie 2000), claiming that the officer said Ridley was "free to go" but then "continued detaining him there and the consent was given during that illegal detention. . . ." *Id.* at 24. Ridley stipulates that "in fact consent was given," but contends that "it was given during an otherwise illegal seizure." *Id.*[2]

To address Ridley's argument, we begin with basic principles. Evidence obtained in violation of the Fourth Amendment "is inadmissible in a criminal prosecution for a charged criminal violation pertaining to the seized evidence." *Anderson v. Commonwealth*, 20 Va. App. 361, 363, 457 S.E.2d 396, 397 (1995), *aff'd*, 251 Va. 437, 470 S.E.2d 862 (1996). To the extent Ridley invokes constitutional guarantees arising under Article I, § 10, of the Virginia Constitution, the state law analysis tracks the federal law interpreting the Fourth Amendment of the U.S. Constitution. *See Henry v. Commonwealth*, 32 Va. App. 547, 551, 529 S.E.2d 796, 798 (2000).

Under Fourth Amendment principles, the constitutional scrutiny applied to a police encounter with a citizen has a direct correlation to the diminution of the citizen's freedom. "Fourth Amendment jurisprudence recognizes three categories of police-citizen confrontations: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based upon specific, articulable facts, commonly referred to as *Terry* stops, and (3) highly intrusive arrests and searches founded on probable cause." *Wechsler v. Commonwealth*, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995) (citation omitted); *see also McGee v. Commonwealth*, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).

Consensual searches "do not implicate the Fourth Amendment." *McGee*, 25 Va. App. at 198, 487 S.E.2d at 261; *Payne v. Commonwealth*, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992); *Iglesias v. Commonwealth*, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988). Once given, consent remains lawful as long as the individual does not withdraw the consent and the searching officers do not exceed the scope of the consent. *See Grinton v. Commonwealth*, 14 Va. App. 846, 850-51, 419 S.E.2d 860, 862-63 (1992).

Nothing in judicial precedent or in the day-to-day experience of law enforcement suggests that each case must neatly fit in one of the three

---

[2] As Ridley's counsel explained, "consent is not really an issue at this point. I haven't raised that the consent is an issue at all." Hearing Transcript at 24. "No, his will is not overborne. I'm not alleging that at all." *Id.* at 26.

categories to the exclusion of the others. A police encounter may, and often does, begin as a consensual conversation and then evolve into a coercive *Terry* stop or an outright arrest — with the citizen's freedom being diminished incrementally. And, as this happens, the Fourth Amendment demands at each incremental step more exact justifications for the loss of freedom experienced by the citizen.

The same phenomenon can occur in inverse order, with the citizen's freedom incrementally restored. For example, in *Ohio v. Robinette*, 519 U.S. 33 (1996), the U.S. Supreme Court held that a consensual encounter may immediately follow the issuance of a traffic summons without violating the Fourth Amendment. The Supreme Court rejected a bright line rule that would have required police to advise citizens stopped for traffic offenses that they were free to go before the officers attempted to engage in consensual interrogations. The Fourth Amendment test for a valid consent to search, the Court held, "is that the consent be voluntary and '[v]oluntariness is a question of fact to be determined from all the circumstances'." *Ohio*, 519 U.S. at 40. Whether a particular consent was in fact voluntary or was the product of duress or coercion presents a question of fact to be determined from the "totality of all the circumstances." *Deer v. Commonwealth*, 17 Va. App. 730, 735, 441 S.E.2d 33, 36 (1994) (citation omitted).

Applying *Ohio*, both federal and state courts in Virginia agree that no Fourth Amendment violation occurs when consensual questioning takes place after an investigatory stop. The Virginia Court of Appeals, in a recent unpublished opinion, held that "[w]ithout some indicated restraint, mere questioning by officers when a routine traffic stop is over and its purpose served, does not amount to a seizure under the Fourth Amendment." *Carter v. Commonwealth*, No. 2445-98-2, slip op. at 5, 2000 WL 1181121 (Va. App. Aug. 22, 2000).[3] The U.S. Court of Appeals for the Fourth Circuit, as well as other federal appellate courts, subscribe to similar views. *United States v.*

---

[3] Though the appellate panel that issued *Carter* chose not to designate it for publication, *see* Va. Code Ann. § 17.1-413(A) (Michie 1999), that does not render the opinion of no value whatsoever. Unpublished opinions have no *precedential* value, but they have *persuasive* value both to the bar and the trial bench. They are, after all, the best evidence of the appellate court's views in the absence of a published opinion directly on point. As a result, a trial court may consider the "rationale" of an unpublished opinion and adopt it "to the extent it is persuasive." *Fairfax County Sch. Bd. v. Rose*, 29 Va. App. 32, 39, n. 3, 509 S.E.2d 525, 528, n. 3 (1999) (*en banc*). Because of their persuasive value, unpublished opinions appear in the notes to the Virginia Code Annotated and on the Virginia Judiciary's Internet Homepage (<http//www.courts.state.va.us>).

*Sullivan,* 138 F.3d 126, 131 (4th Cir. 1998); *United States v. Lattimore,* 87 F.3d 647, 652-53 (4th Cir. 1996) (*en banc*); *United States v. Rusher,* 966 F.2d 868, 877 (4th Cir. 1992); *see also United States v. Pruitt,* 174 F.3d 1215, 1220 (11th Cir. 1999).

Ridley argues that the Virginia Supreme Court in *Reittinger v. Commonwealth,* 260 Va. 232, 532 S.E.2d 25 (2000), has altered the law on this point. Not so. In that case, the Court merely held that the traffic stop did *not* deescalate from a *Terry* stop to a consensual encounter. After the traffic stop reached its natural end, the officers asked the suspect three times for consent to search him. The suspect steadfastly refused to reply. Despite the absence of consent and any legal basis for extending the *Terry* stop, the officers nonetheless searched the suspect ostensibly because of the officers' concerns over their physical safety. This they could not lawfully do.

*Reittinger* merely stands for the unremarkable proposition that, without sufficient legal grounds for a coercive search, no search of the suspect may be conducted without the suspect's consent. Nothing in *Reittinger,* however, implies that a traffic stop (or, for that matter, any *Terry* investigative detention) can *never* be immediately followed by a consensual encounter. *Reittinger* should not be read "to eviscerate the basic principle that a consensual search can follow a legitimate detention, in light of the Supreme Court's refusal in *Ohio v. Robinette,* 519 U.S. 33 (1996), to adopt a per se rule prohibiting such encounters." *Carter v. Commonwealth,* No. 2445-98-2, slip op. at 5, n. 2, 2000 WL 1181121 (Va. App. Aug. 22, 2000).

Applied to this case, these principles reveal the error of Ridley's assertion that his consent arose out of an illegal detention. Deputy Barry had sufficient grounds for the initial traffic stop. Deputy Barry observed Ridley's vehicle "swerve" after it passed by and then move "about half a car across the center double lines," leading Barry to believe the driver was possibly intoxicated. *Id.* at 9, 29. This observation satisfies the *Terry* stop requirements. After completing the traffic stop, Deputy Barry advised Ridley that he was free to go.[4] At that point, the coercive *Terry* stop ended.

After a short pause that lasted a matter of seconds, Deputy Barry asked Ridley for consent to search the vehicle. Not only did Ridley provide verbal consent, he also participated in the search by unlocking and opening the trunk

---

[4] Ridley concedes that the search was consensual and that the request for consent occurred immediately after Deputy Barry advised Ridley that he was free to leave. *See* Hearing Transcript at 36 ("The officer says you're free to go. And then the immediate question, Can I ask you a question? or Can I search your car?"); *see also id.* at 24.

for Deputy Barry.[5] The circumstances of this case show a complete absence of any coercion — whether by means of physical force or show of authority[6] — that might have intimidated Ridley into disbelieving the officer's statement that Ridley was free to go. Acquiescence in a police request, "which most citizens will do, does not negate the 'consensual nature of the response'." *Green v. Commonwealth*, 17 Va. App. 606, 610, 440 S.E.2d 138, 140-41 (1994) (citations omitted). Because this consensual encounter followed on the heels of a *Terry* stop, the circumstances must plainly show that the citizen remained "free to disregard the questions" of the officer. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion). And in this case, Ridley had that freedom.

In sum, the Court denies Ridley's motion to suppress the evidence of cocaine paraphernalia found in his vehicle. Because Ridley both consented to the search and voluntarily participated in it after having been released from the traffic stop, he has no grounds for asserting that the Deputy Barry violated the Fourth Amendment. The Court, therefore, declines Ridley's invitation to exclude the incriminating evidence from the trial of his case. It is so ordered.

---

[5] The presence of consent, by itself, takes this case outside the scope of *Reittinger*. *See Tate v. Commonwealth*, No. 1860-99-2, slip op. at 9-10, 2000 WL 1486586 (Va. App. Oct. 10, 2000) ("We hold that *Reittinger* is not applicable to this case. In *Reittinger*, the appellant never consented to the search, and, instead, merely exited the van. In this case, it is uncontested that appellant consented to the search of his person and was aware that [the officer] was conducting a drug investigation.").

[6] "In order for a seizure to occur, the police must restrain a citizen's freedom of movement by the use of physical force or show of authority." *Ford v. City of Newport News*, 23 Va. App. 137, 142, 474 S.E.2d 848, 850 (1996) (citation omitted); *see Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Terry*, 393 U.S. at 19, n. 16.