*35 JUSTICE KINSER,
with whom SENIOR JUSTICE CARRICO joins, dissenting.
Unlike the majority, I conclude that the encounter that ensued between Officer Blaine Davis and the defendant, Leon Thomas Harris, after Officer Davis returned the social security card to Harris was consensual because a reasonable person in those circumstances would have felt free to leave and to refuse Officer Davis’ request to search the vehicle. I further conclude that Harris voluntarily consented to the search. Thus, I respectfully dissent.
“Law enforcement officers do not violate the Fourth Amendment’s prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.” United States v. Drayton, 536 U.S. 194, 200 (2002). Even when a law enforcement officer has no basis to suspect that a particular individual is engaged in criminal activity, the officer “may pose questions, ask for identification, and request consent to search . . . provided [the officer does] not induce cooperation by coercive means.” Id. at 201. “[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers’ requests or otherwise terminate the encounter.” Florida v. Bostick, 501 U.S. 429, 439 (1991). “If a reasonable person would feel free to terminate the encounter, then he or she has not been seized.” Drayton, 536 U.S at 201. The “reasonable person” test is objective and “presupposes an innocent person.” Bostick, 501 U.S. at 437-38.
When determining whether a reasonable person would feel free to terminate an encounter, a court may consider the language and tone of voice used by the police officer, whether the officer displayed a weapon, and whether there was physical contact between the officer and the individual. United States v. Mendenhall, 446 U.S. 544, 554 (1980); see also, Bolden v. Commonwealth, 263 Va. 465, 471, 561 S.E.2d 701, 704 (2002). Other relevant factors include the number of officers present, the location, time and duration of the encounter, United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996), and whether the police officer retained the individual’s identification or personal property, United States v. Weaver, 282 F.3d 302, 310 (4th Cir. 2002), cert. denied, 537 U.S. 847 (2002).
In Reittinger v. Commonwealth, 260 Va. 232, 532 S.E.2d 25 (2000), this Court considered whether a defendant was unlawfully *36 seized following a routine traffic stop. A deputy sheriff stopped a van being operated by Reittinger because the van had “ ‘only one operable headlight.’ ” Id. at 234, 532 S.E.2d at 26. After Reittinger displayed a new headlight that he planned to install on the van, the deputy issued only a verbal warning and told Reittinger that he was “ ‘free to go.’ ” Id. The deputy then asked Reittinger if he had any illegal weapons or drugs in the vehicle. Id. When Reittinger replied that he did not, the deputy asked to search the van and repeated the request twice more while Reittinger consulted with the passengers in the vehicle. Id. Reittinger never answered the deputy’s repeated requests to search but simply exited the vehicle. Id. During a subsequent “pat down” search of Reittinger, the deputy found a smoking pipe containing marijuana residue. Id.
In considering the circumstances of the encounter, we noted that Reittinger had been stopped in a rural area in the nighttime, was in the presence of two armed deputies, and was asked repeatedly for consent to search the vehicle. Id. at 236-37, 532 S.E.2d at 27. We determined that, in those circumstances, a reasonable person would not have felt “free to disregard the deputies and simply drive away.” Id. at 237, 532 S.E.2d at 28.
In the present case, the majority notes that, although Officer Davis returned Harris’ social security card, he did not inform Harris that he was free to leave or state whether he would be charged with a traffic offense. Further noting that Harris was in the presence of two armed police officers and two patrol vehicles with activated flashing lights, the majority concludes that a reasonable person would not have felt free to terminate the encounter. I disagree.
In my view, the majority ignores several important factors that demonstrate that Harris was not seized after the traffic stop ended. The encounter between Harris and Officer Davis occurred at 4:00 a.m. Thus, the flashing lights on the patrol cars served an important safety function, i.e., they alerted other drivers to the presence of vehicles and people along the roadside. The encounter here, unlike that in Reittinger, took place in “a built-up commercial area.” Although two officers were present, that fact is not dispositive. See Drayton, 536 U.S. at 205 (presence of second officer at front of bus did not “tip the scale in respondents’ favor”); Immigration & Naturalization Service v. Delgado, 466 U.S. 210, 219 (1984) (no seizure even though several uniformed INS agents were positioned near exits of factory). In this case, the second officer’s participation in the encounter was limited to “watching” the passenger. Further, there is *37 no evidence that either officer brandished his weapon, physically touched Harris, or used a tone of voice or language indicating that Harris was not free to leave or that compliance with the request to search was compelled.
Instead, Officer Davis returned Harris’ social security card to him after verifying that Harris had provided accurate information about his identity and had a valid driver’s license. Only then did Officer Davis ask Harris whether he had anything illegal in the vehicle or on his person. See Lattimore, 87 F.3d at 653. Finally, in my view, the most important distinction between this case and Reittinger is the fact that Harris, unlike Reittinger, was asked only once for permission to search his vehicle and that he expressly consented in response to that single request. See United States v. Hernandez, 93 F.3d 1493, 1499 (10th Cir. 1996) (“ ‘accusatory, persistent, and intrusive’ questioning may turn an otherwise voluntary encounter into a coercive one if it conveys the message that compliance is required”) (quoting United States v. Little, 60 F.3d 708, 712 (10th Cir. 1995)). Thus, I conclude that Harris was not unlawfully seized in violation of the Fourth Amendment.
I must now determine whether Harris’ consent to search was valid. “The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and ‘[vjoluntariness is a question of fact to be determined from all the circumstances.’ ” Ohio v. Robinette, 519 U.S. 33, 40 (1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973)). Where, as here, “the question of voluntariness pervades both the search and seizure inquiries, the respective analyses turn on very similar facts.” Drayton, 536 U.S. at 206.
The evidence shows that Harris expressly consented to the search of his truck. All the circumstances demonstrating that the encounter between Harris and Officer Davis was consensual also establish that Harris’s consent to search was voluntarily given. The only additional step Officer Davis could have taken to ensure that Harris’ consent was voluntary would have been to inform Harris of his right to refuse the request to search the vehicle. However, “ ‘[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.’ ” Robinette, 519 U.S. at 39 (quoting Schneckloth, 412 U.S. at 227).
Based on the totality of the circumstances, I conclude that Harris’ consent to search was voluntary. Therefore, the search did not violate the Fourth Amendment. Other courts have found that consents to *38 search given in similar circumstances were voluntary. E.g., United States v. Erwin, 155 F.3d 818, 823 (6th Cir. 1998) (finding consent to search given following lawful traffic stop was voluntary where evidence showed that deputies did not show force or use threatening language); State v. Ready, 565 N.W.2d 728, 733 (Neb. 1997) (finding that the totality of the circumstances established defendant’s consent was voluntary where evidence showed that he agreed to let the officer search his vehicle and no evidence of coercion was presented); Burgos-Seberos v. State, 969 P.2d 1131, 1135 (Wyo. 1998) (finding that the trial court did not abuse its discretion by denying motion to suppress where evidence showed defendant “voluntarily grant[ed] his permission for [the officer] to search his car” and there was no evidence of coercion although “two officers were present and the hour was late”).
For these reasons, I respectfully dissent and would affirm the judgment of the Court of Appeals of Virginia.