## CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Brandon Jerel Washington

February 27, 2004

Case No. (Criminal) CR03002097

BY JUDGE MARC JACOBSON

Brandon J. Washington was riding in the passenger seat of his own car, which was being driven by Courtney Harris. The car was stopped by Officer Michael J. Reardon and his partner because Reardon believed that Harris was driving on a suspended license. Reardon based this knowledge on his past experience with Harris, which extended back about ten years. (Tr. at 12–13.) After stopping the vehicle, Reardon began a short conversation with Harris. (*Id.* at 37.) After this conversation, Reardon asked Harris and Defendant to step out of the vehicle. Reardon testified that, at that time, he had not seen Defendant do anything illegal or suspicious. (*Id.* at 37.) Reardon and his partner then asked Defendant for identification, which he supplied. Reardon asked Defendant for permission to search his person and Defendant consented. Reardon conducted a search, but found nothing except "a little bit of money in his pocket." (*Id.* at 19.) While Reardon was searching Defendant, his partner ran a check on Defendant's information and found no outstanding warrants; however, Defendant's identification was not immediately returned. While Defendant's identification was allegedly still in police custody, Reardon asked Defendant for permission to search the car and Defendant consented. (*See id.* at 38–44.) Reardon began by searching the interior of the vehicle, but found nothing except "a little bit of money underneath the floor mat." (*Id.* at 24.) Reardon then took the keys out of the ignition and used them to open the trunk. In the trunk Reardon found a shoebox containing marijuana and heroin. (*Id.* at 24–25.) At that point, Reardon told Defendant and Harris that they were under arrest and orally

advised them of their *Miranda* rights. (*Id.* at 29.) Defendant was charged with possession of heroin and possession of marijuana with intent to distribute.

Defendant filed a Motion to Suppress, on the grounds that "the search of his vehicle and the seizure of any evidence was not done pursuant to a search warrant, nor consent, and without any probable cause in violation of the Fourth Amendment." (Mot. to Supp.)

"Generally, a warrantless search is presumptively invalid." *Copeland v. Commonwealth*, No. 3002-02-1, 2004 Va. App. LEXIS 62, at *6 (Feb. 10, 2004) (*citing Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). "The Commonwealth has the burden of proving the legitimacy of a warrantless search and seizure." *Reittinger v. Commonwealth*, 260 Va. 232, 235–36, 532 S.E.2d 25, 27 (2000) (quoting *Simmons v. Commonwealth*, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989)). Further, the Commonwealth has the burden of proving that Defendant's "consent to search was not 'obtained by exploitation of [an illegal detention]'." *Harris v. Commonwealth*, 266 Va. 28, 34, 581 S.E.2d 206, 210 (2003) (quoting *Hart v. Commonwealth*, 221 Va. 283, 289, 269 S.E.2d 806, 810 (1980)).

The Fourth Amendment protects persons from unreasonable searches and seizures. "Police officers do not violate the Fourth Amendment when they stop and question an individual if they have reasonable articulable suspicion that the person is engaged in criminal activity," *Harris*, 266 Va. at 32, 582 S.E.2d at 209 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)), "or when the person's encounter with police is consensual." *Id.* (citing *Florida v. Bostick*, 501 U.S. 429, 437 (1991)); *see United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.").

"A consensual encounter occurs when police officers approach persons in public places 'to ask them questions,' provided 'a reasonable person would understand that he or she could refuse to cooperate'." *Piggott v. Commonwealth*, 34 Va. App. 45, 48 537 S.E.2d 618, 619 (2000) (quoting *Payne v. Commonwealth*, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992)). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Piggott*, 34 Va. App. at 49, 537 S.E.2d at 619 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1979)).

"There is no 'litmus test' for determining whether an encounter is consensual or constitutes an illegal seizure. If, however, a reasonable person

would not feel free to decline an officer's requests or would not feel free to leave, the encounter is not consensual and constitutes an illegal seizure under the Fourth Amendment." *Id.* (citing *Mendenhall*, 446 U.S. at 558–59). However, several factors have been identified as relevant when determining whether a seizure has occurred, including: the retention of documents requested by an officer, whether a citizen was told that he or she was free to leave, the threatening presence of a number of police officers, physical contact between an officer and a citizen, an officer's language or tone of voice, and the display of weapons. *Id.*; *see Ohio v. Robinette*, 519 U.S. 33, 36 (1996); *Mendenhall*, 446 U.S. at 553; *McCain v. Commonwealth*, 261 Va. 483, 491, 545 S.E.2d 541, 545 (2001). "The decision whether [an] encounter was consensual must be made based on the totality of the circumstances," *Harris*, 266 Va. at 32, 581 S.E.2d at 209 (citing *Mendenhall*, 446 U.S. at 554), and whether "a reasonable person would have felt 'free to leave' and 'free to decline the officer's requests or otherwise terminate the encounter'." *Perry v. Commonwealth*, No. 2466-00-2, 2002 Va. App. LEXIS 430, at *5 (Va. App. July 30, 2002) (unpublished decision) (citing *Florida v. Bostick*, 501 U.S. 429, 436 (1991) (limiting police consensual encounters with citizens to those in which "a reasonable person would feel free to disregard the police and go about his business")).

In *Harris v. Commonwealth*, 266 Va. 28, 581 S.E.2d 206 (2003), a police officer (Officer Davis) initiated a traffic stop based on a broken license plate light he observed on Leon Harris's (L. Harris) truck. Shortly after the officer stopped the truck, a second police officer arrived on the scene. Both police cars were marked and had their flashing lights activated. Officer Davis asked L. Harris for his driver's license and vehicle registration, but L. Harris only produced his social security card. Officer Davis told L. Harris to get out of the truck. *Id.* at 30, 581 S.E.2d at 208. After confirming L. Harris's identity and verifying that L. Harris had a valid drivers license, Officer Davis returned his social security card and did not charge L. Harris with a traffic offense. *Id.* at 30–31, 582 S.E.2d at 208. Officer Davis then asked L. Harris if he had anything illegal in the truck or on his person; L. Harris replied that he did not. When Officer Davis asked L. Harris if he could search the truck, L. Harris consented. *Id.* at 31, 582 S.E.2d at 208. "Officer Davis testified that during this time he had no reasonable articulable suspicion that either L. Harris or his passenger had done anything illegal and that L. Harris was free to go. However, Officer Davis did not tell either L. Harris or his passenger that they were free to go." *Id.*

The Supreme Court of Virginia held that under these circumstances, "a reasonable person would not have known that the investigation of the traffic offense had terminated and, thus, would not have felt free to disregard the

officer's questions or have felt free to leave." *Id.* at 33, 581. S.E.2d at 210. In reaching this conclusion, the Court recognized that the failure to affirmatively inform an individual that he is free to leave does not by itself require a finding that the encounter was nonconsensual. *Id.* However, the Court noted that in addition to not informing L. Harris that he was no longer subject to a detention for a traffic violation, "[L.] Harris remained in the presence of two armed, uniformed police officers and two patrol vehicles with activated flashing lights." *Id.*

Thus, when Officer Davis began questioning L. Harris about possession of contraband, the encounter was not consensual and L. Harris was seized for purposes of the Fourth Amendment. Because Officer Davis had neither a warrant nor reasonable suspicion to believe that L. Harris was engaged in any criminal activity, this seizure violated L. Harris's Fourth Amendment rights. The Court held that any evidence obtained as a result of the illegal seizure should be suppressed as the "fruit" of an illegal seizure. *Id.* at 34, 581 S.E.2d at 210.

In *Perry v. Commonwealth*, No. 2466-00-2, 2002 Va. App. LEXIS 430 (Va. App. July 30, 2002) (unpublished decision)[1], a police officer (Officer Grohowski) was observing an apartment complex for evidence of narcotics transactions when he saw a vehicle enter the complex and later leave. *Id.* at *2. The officer followed the vehicle in an unmarked police car; subsequently, a uniformed officer in a marked police car stopped Perry for speeding. *Id.*

The uniformed officer asked Perry for his license and registration. While the uniformed officer was checking Perry's information, Officer Grohowski asked Perry to exit the vehicle, advised him that he had seen Perry in the apartment complex, and asked if he had any weapons or drugs. Perry handed over a knife he had. *Id.* at *2–3. The uniformed officer determined that Perry's documents were valid and that he would not cite Perry for a traffic violation. The uniformed officer gave Perry's license and registration to Officer Grohowski. Officer Grohowski could not recall whether he was holding Perry's license and registration or had given the documents back to Perry before he requested consent to search. *Id.* at *6.

The Virginia Court of Appeals held that when Officer Grohowski continued questioning Perry after learning that the uniformed officer did not intend to issue a citation, Officer Grohowski effected a separate detention for which he lacked reasonable articulable suspicion. *Id.* "When the

---

[1] Pursuant to *Fairfax County Sch. Bd. v. Rose*, 29 Va. App. 32, 39, n. 3, 509 S.E.2d 525, 530, n. 3 (1999) (en banc), "[a]lthough an unpublished opinion of the Court [of Appeals] has no precedential value . . . a court . . . does not err by considering the rationale and adopting it to the extent it is persuasive."

uniformed officer gave Perry's driver's license and registration to Officer Grohowski, the circumstances were not such as would indicate to a reasonable person 'that he was free to disregard the [officers] and simply drive away'." *Id.* at *7 (quoting *Reittinger*, 260 Va. at 237, 532 S.E.2d at 28). Therefore, "once the valid detention ended, the officers unlawfully detained Perry and obtained consent that was not freely and voluntarily given." *Id.*; *see Deer v. Commonwealth*, 17 Va. App. 730, 735, 441 S.E.2d 33, 36 (1994); *see also Bumper v. North Carolina*, 391 U.S. 543, 548 (1968) (holding that consent must be "freely and voluntarily given").

In *Reittinger v. Commonwealth*, 260 Va. 232, 532 S.E.2d 25 (2000), Deputy Sheriff Hugh Bolen stopped a vehicle because it only had one operable headlight. Deputy Bolen approached the vehicle and asked the driver, Reittinger, for his license and registration and informed him that there was only one operational headlight. Reittinger showed Deputy Bolen a new headlight that he planned to install the next day. Deputy Bolen decided against issuing a citation and told Reittinger that he was "free to go." *Id.* at 234, 532 S.E.2d at 26.

Immediately after, however, Deputy Bolen asked Reittinger whether he had any illegal weapons or drugs in the vehicle, and Reittinger stated that there was nothing in the van. Deputy Bolen then asked Reittinger for permission to search the van. *Id.*, 532 S.E.2d at 26. Rather than answer, Reittinger exited the van; Deputy Bolen then saw a bulge in Reittinger's pocket and conducted a pat down. Deputy Bolen thought it may be a weapon and asked Reittinger to empty his pocket. Reittinger removed an object that was a smoking pipe containing marijuana residue. Deputy Reittinger testified that, when he requested consent to search the van, "he had no reasonable and articulable suspicion of criminal activity on the part of Reittinger." *Id.* at 234–35, 532 S.E.2d at 26.

Reittinger was found guilty of possession of marijuana. The Court of Appeals reversed the conviction; however, on rehearing en banc, the Court of Appeals affirmed the conviction. In reversing the conviction, the Supreme Court of Virginia weighed several factors: (1) that Reittinger had been stopped in a rural area at night; (2) Reittinger was in the presence of two armed deputies; (3) Deputy Bolen asked Reittinger several times for permission to search the vehicle, despite having no reasonable articulable suspicion of criminal activity; and (4) that Reittinger was told that he was free to go.

The Supreme Court held, "Although Deputy Bolen had told Reittinger that he was free to go, we think that the events that transpired immediately thereafter would suggest to a reasonable person that just the opposite was the case. We do not think that a reasonable person, under the circumstances,

would have considered that he was free to disregard the deputies and simply drive away. Therefore ... Reittinger was unlawfully seized in violation of his Fourth Amendment rights" and the trial court "erred in refusing to suppress the product of the unlawful seizure and search of Reittinger." *Id.* at 237, 532 S.E.2d at 28.

In the instant case, both officers at the scene were in uniform and were driving a marked unit. After checking Defendant's information and finding no outstanding warrants, neither officer at any time informed Defendant that he was free to go. There is a question as to whether Defendant's identification was returned to him before Reardon requested consent to search the vehicle; the evidence presented at the motion hearing suggests that Defendant's identification was most likely in the possession of either Reardon or his partner when Defendant was asked for consent to search the vehicle. (*See* Tr. at 39–44, 47.)

The Court of Appeals of Virginia stated in *Piggott v. Commonwealth*, 34 Va. App. 45, 537 S.E. 2d 618 (2000), that by "retaining [the passenger's] identification [for a few minutes] while he ran a warrant check ... [the officer] implicitly commanded [the passenger] to stay." *Id.* at 49, 537 S.E.2d at 619. Therefore, under the totality of the circumstances as they existed in *Piggott*, "[a] reasonable person ... would not have believed that he could terminate the encounter and walk away." *Id.*; *see Cartwright v. Commonwealth*, No. 1349-00-2, 2001 Va. App. LEXIS 254, at *9 (Va. App. May 15, 2001) (unpublished decision) (holding that "[w]hen [the officer] subsequently obtained [driver's] driver's license ... and asked if he could search [him], [the officer's] actions, viewed in their entirety, escalated the consensual encounter into a seizure and vitiated appellant's consent to be searched"); *Richmond v. Commonwealth*, 22 Va. App. 257, 468 S.E.2d 708 (1996) (holding that "what began as a consensual encounter quickly became an investigative detention once the [officer] received [appellant's] driver's license and did not return it to him"); *see also Salt Lake City v. Ray*, 998 P.2d 275, 276–78 (Utah App. 2000) (holding that the first officer's possession of the pedestrian's identification to run a warrant check when the second officer sought consent to a search constituted a seizure which vitiated consent, noting that that "critical time at issue [was] ... when [the pedestrian] consented to the search"). *But see McCain v. Commonwealth*, 261 Va. 483, 545 S.E.2d 541 (2001).[2]

---

[2] The Supreme Court of Virginia's decision in *McCain*, is factually distinguishable from the case at bar. In *McCain*, the officer returned McCain's driver's license after conducting a warrant check but before requesting consent to search McCain's vehicle. *Id.* at 485, 545 S.E.2d at 543. Further, when the officer indicated that he needed to perform a pat-down search for weapons, McCain refused and walked away. *Id.* at 491, 545, S.E.2d at 546.

Under the circumstances of the case at bar, a reasonable person would not have felt "free to leave" or "free to decline the officer's requests or otherwise terminate the encounter." *See Perry*, 2002 Va. App. LEXIS 501, at *5. Therefore, Defendant was seized for purposes of the Fourth Amendment.

The officers had neither a warrant nor reasonable articulable suspicion that criminal activity was afoot. Reardon testified that he had not seen Defendant do anything illegal or suspicious. (Tr. at 37.) An unparticularized suspicion or hunch is not sufficient. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Therefore, the seizure was in violation of Defendant's Fourth Amendment rights.

Even if Defendant's consent to search the vehicle was voluntary, the Supreme Court of Virginia has held that "voluntariness alone is not sufficient to overcome the taint arising from [an] unlawful seizure. Evidence obtained in [a] search ... is admissible only if it is not the product of an illegal seizure and is the result of an independent act of free will." *Harris*, 266 Va. at 34, 581 S.E.2d at 210; *see Segura v. United States*, 468 U.S. 796, 804–05 (1984); *Deer v. Commonwealth*, 17 Va. App. 730, 736, 441 S.E.2d 33, 37 (1994). Thus, the evidence obtained as a result of the illegal seizure of Defendant should be suppressed as a "fruit" of the illegal seizure. *See Harris*, 266 Va. at 34, 581 S.E.2d at 210–11.

The Court finds that the seizure was in violation of Defendant's Fourth Amendment rights. Thus, the evidence obtained as a result of the illegal seizure of Defendant should be suppressed as a "fruit" of the illegal seizure.

The Motion to Suppress is granted.